Good morning. The panel will hear six cases this morning. We'll take a short break after the third case. And the first one is United States v. Dawson, No. 25, 1096. Mr. Lund, you may proceed. Good morning. Happy St. Patrick's Day. May it please the Court, my name is Bill Lund. I represent the appellant Jamal Lawrence Dawson. This case involves the issue of whether docket sheets written by court clerical staff in a juvenile adjudication years earlier meet the reliability standard established by the Supreme Court in Shepard and later in Ellinger and followed by this Court in Martinez-Hernandez and Abeyta, Leverton and Wilkins to enhance an appellate's sentencing guidelines range from 57 to 71 months to 84 to 105 months. Getting the sentencing guidelines correctly calculated is important. Under Gall, the guidelines are the starting point. And they are to be followed throughout the entire sentencing process. The judge is to remain cognizant of them. Under Pew, the guidelines are called the anchor that a trial court that anchors the trial court's discretion. In a case like this one where the guidelines might be less than what had been calculated by the court, this court in Savillon-Umana and also in Cook has recognized that when the guidelines move up or down, the remainder of the sentencing such as departures or variances also can be skewed upward or downward as well. This case involves juvenile adjudications that took place in 2017 in two cases. And they were said to run consecutively to a case, a previous juvenile adjudication in a 2016 case. My client had four juvenile adjudications in 2016. And then he had the two in 2017. All of the records in all of those cases were lost. So there's no way to know when the 2016 cases were actually discharged. Counsel, can I just ask you about that last point? Were they lost or were they just not produced? Are they out there somewhere where they could be found at this point? It's a question I've never actually thought of. I can't imagine as I read the record in this case that if there was something that might have been available that they might not have taken time to go find it. Because there was so much time spent about these records. And certainly everyone seemed to acknowledge how shocking it was that the juvenile bureau in Denver, or rather in Colorado, no longer had these records. So I assume that they're really lost and there's no way to find them. In this case, the issue, of course, becomes in the two juvenile cases in 2017, my client receives a one-year sentence. During that one-year period, he didn't report back a day that he had a day pass and was gone for 64 days. His period of incarceration on those two 2017 juvenile intubations started on November the 21st of 2017. And then the offense that he committed, which he's charged with in federal court, which is possession of the firearm, was committed on February the 13th, 2024. So if you take the one-year sentence and you add the 64 days of time for the period he had escaped, you come up with at least 20-day, a 20-day gap. Which means that even if he might have started his sentence to the 2016 case at some point, he could have completed the 2016 case within that 20-day period. And as a result, you would not have counted those 2017 cases under USSG. Counsel, could I just, that raises a question I've had about the timeline here, and it's kind of a complicated timeline. There's a lot of offenses, a lot of sentences, a lot of consecutives and concurrences and all of that. And in sorting through it, one question I had is a general matter, and then we'll get to this particular case. In the juvenile system in Colorado, does the juvenile get credit for time served for the pre-sentence detention period? There is, well, certainly, again, in this case, the record suggests that you did. And on top of that, the record also indicates that it's very common for, that you don't serve your sentence day for day. So if you got a two-year sentence, for instance, in those 2016 cases, it's very possible that you would not have served two years in those sentences. Well, that's because that was a zero-to-two-year sentence. Yes, that's correct. Or actually an indeterminate sentence. But again, we don't have a lot of information about how the Colorado juvenile system works through the 2017 offenses. I think someone's calling them the disputed cases. Is that okay?  That was a one-year sentence. Yes. But at that point, wasn't the system not doing indeterminate sentences? I can't answer that. I don't know that that's in the record. The problem is there's a lot we don't know about how the system works that isn't reflected in the documents. And you said the sentence for the disputed cases started in November 2017, but the sentence was imposed in January 2018. And the government's arguing that that's when the sentence began. You add the 64 days to the one year, and then that gets you past this critical day of February 13, 2019. That's their argument. Your argument is the sentence started in November 2017, so you don't get it. So why are you right and the government isn't? Well, under the Gay case, ambiguity is in favor of criminal defendants. Well, apart from ambiguity, I get back to, does that pre-sentence period of time, does that count? And it seems like we don't know from any records. And the answer is if you don't know, that is ambiguous. And so you have to make that ruling in favor of the defendant. And certainly there was never any dispute that he had been taken into custody in those two 2017 cases on November 21st of 2017. Well, let me ask you a different type of question. So again, both in terms of how things generally work in the system, we could use a little more information about, but also here. The sentence is imposed for one year. Does a juvenile who is sentenced to one year typically serve the whole year? Do we know whether this one year sentence would serve in full? Is there some kind of good time credit system in the juvenile system? Do we know any of that? Well, the only thing we know is what the defendant's attorney argued at the hearing, and she indicated that in the juvenile sentencing in Colorado, it is not typically day for day. And that was not disputed by the government's attorney. But it may not typically be. But then, first of all, that doesn't tell us a lot. And second, it doesn't tell us anything about this specific case. How long, for example, did he serve the zero to two? How long did he serve the one year sentence? And to the extent we're trying to total up the days, how are we supposed to do that? You're not. And the defendant's argument was that it should be unknown. And therefore, the rule of lenity, just as it applied to the 2016 juvenile adjudications, which were held not to be appropriate for sentencing enhancements, should also apply to the 2017 cases. Can I ask, because you referenced rule of lenity, what authority do you have that rule of lenity applies to sentencing calculations rather than limited to the interpretation of substantive crimes? Well, there are at least three cases that deal with the issue of docket sheets, and then there's also... No, I'm not talking about docket sheets and interpreting those. I'm talking about specifically invoking the rule of lenity. What authority do you have that rule of lenity, which I think of as usually limited to interpreting substantive crimes? Did the defendant know or not know about the substantive crimes? You're applying what you call the rule of lenity to the calculation of confinement times. An administrative question. Lenity is invoked because we say people should know what would control their criminal behavior or not. But a sentencing calculation doesn't seem to mean me to really relate to what a defendant has to or not have to do. It instead refers to how the probation department calculates confinement times. So I'm not certain, I don't feel comfortable that we apply a rule of lenity concept to sentencing calculations. So I'm asking you, what authority do you have that specifically invokes the words rule of lenity in calculating sentencing calculation times? Well, I think that's a good point. I don't know that it necessarily does apply. So you don't really mean the rule of lenity. What you really mean is that there's some starting burden of the government to make a case before the defendant has to start challenging it. We can rely on the case from this court in Martinez-Hernandez. I understand. The cases that you have, it was just the terminology. So I think we're on the same page. And so the reliability standard for documents that you use for purposes of calculating sentencing guidelines does not include police reports, and it does not include docket sheets. Counsel, before you run out of time, I have a couple of things I wanted to ask you. Just as a general matter in your experience here in Colorado, do you recognize the difference between when somebody is being held in custody pending adjudication of charges and when someone is being held in custody pending or for purposes of serving out a sentence? I hate to tell you, but I don't practice in Colorado. Well, and the reason I ask is because I look at this case, and what happened here is when he was sentenced on the 2017 cases, they writted him out to bring him in. And generally, when someone's being held pending adjudication, there's no writ to bring them to court. They're just brought. But when someone is serving a sentence for another crime, and they're being charged with an additional crime that has to be adjudicated, they writ them out to bring them to court. But he was already serving. His life was even more complicated by an attempted murder charge that he was being held on. And so he could have been writted out on the attempted murder charge, and he stayed in custody on the attempted murder charge until 2023. So we don't know what case he got writted out on. Okay, fair enough. So do you have a – I mean, why can't we presume that the district court judge, when he sentenced the defendant to a consecutive sentence, was not in possession of knowledge that he was serving the prior sentence? Otherwise, you don't give a consecutive sentence. I don't know why that might have occurred. I mean, all we've got is the record of what we have of a record in this case. I can't answer that. I mean, wouldn't that be evidence, though, that he was serving a sentence? Well, even if he was serving a sentence, he might have completed that sentence the next day, and then we'd still have the same problem we have currently in this case. You've got those 20 days. He could have finished that sentence. May I please reserve my time? 11 seconds. Thank you. Good morning, Your Honors. Michael Johnson for the United States. We are relying primarily on the first argument that we presented in our answer brief. That first argument is that on August 7, 2019, Mr. Dawson received a consecutive sentence, and that demonstrated, that consecutive sentence on August 7, 2019, demonstrated that the state court judge had determined that he was still serving time in the two operative cases here, namely 2017 JDA 36 and 2018. Just a second. Just a second. Demonstrate it. Give me the names of those two, but why does it demonstrate that he was serving from two previous ones rather than just one of those? But give the sides first of the two prior ones again. I have it, but I'm going to write it here in a note. Yes, Your Honor. On page. Well, I don't want you to take any time. No, no, I can give you the sites, Your Honor. So the sentences that are the operative sentences at issue here are 2017 JDA 36 and 2018 JD 76. On August 7, 2019, Mr. Dawson received a consecutive sentence in two other cases, and those sentences ran consecutively to the two operative cases at issue here. Well, other than what's shown on the docket sheet, is there any evidence that the judge, not in federal district court but in juvenile court, was actually aware of whether he was still serving those sentences? Yes, there is, Your Honor. That issue here wasn't simply that the state court judge issued a sentence on August 7, 2019, saying that these two new sentences would run consecutively to whatever Mr. Dawson might be serving at this time. Was that his language? They'll run consecutively to whatever sentences you're serving? That's no proof at all that the district judge had determined he was serving prior sentences. Whatever it says, I don't know, but I'm not going to worry about it. That's exactly right. And there's no evidence here to show that the state court judge made that statement. To the contrary. I think the only thing we have is the docket sheet. I'm looking at it right now. Comments, two years, consecutive to the 836 and 76, which are the disputed cases, concurrent to 896, 15, 236. That's all we've got. That is important, though. Well, my question to you is, was there any evidence that this judge knew whether the disputed case sentences were still being served? Other than this docket sheet. If you're referring to the pre-sentence investigation report. No, I'm asking you, is this it? And you're not answering the question. This is, I believe you're referring to the PSR. No, I'm referring to the docket sheet. It's in the record. I just read you the comment. Isn't that all there is? That's what the PSR talks about. So you can't go to the PSR when it's only repeating what's in this docket sheet. The only information that was before the district court at sentencing in this case was the information, Your Honor, that you just mentioned. Thank you. And it doesn't show whether the state judge was aware or had knowledge that those sentences were still being served. Other than to use the word consecutive. And isn't it true that even if the disputed case sentences had been completed, that this new sentence actually was consecutive? It was an add-on. It was going to be served in full. And I guess I'll add one other question. In the juvenile system in Colorado, if you know, and there's a lot that we haven't been told about the juvenile system in Colorado because I'm not sure whether anyone really had completely presented this in district court, doesn't the sentencing judge have to say it's consecutive? Do we know that? As to one of the offenses, there is a requirement that a sentence be issued consecutively. And we pointed that out in a footnote in our answer brief. All right. But is this all we've got? That's what you said. Yes, but this is. That's all we've got. Why don't we send this back to the district court to get this sorted out? Because there is just a lot we don't know based on this record. The reason why the court need not send it back to the district court is because the information, Your Honor, that you just referred to is sufficient to show by a preponderance of the evidence that Mr. Dawson was serving these two sentences in the two operative cases as of August. This is a preponderance of the evidence document? Why is this preponderance? Preponderance, this shows that it's more likely than not that the state court judge looked at Mr. Dawson's records, determined that. What records? There were no records. What other records were there? And if there were, why aren't they in the record? The documents would show whether or not Mr. Dawson was currently serving a sentence. You're assuming a lot, counsel. How do you know that? I mean, docket sheets are not kept up to date on a daily basis. A docket sheet reflects what a sentencing judge says at a prior point in time. And nobody day to day keeps saying, yep, still serving the sentence, put that on a docket sheet, the next day on a docket sheet, yep, still serving the sentence. It doesn't keep a running tab of when the juvenile is released or not. The fact that the information in the record here to this court indicates that the state court judge examined a number of sentences that Mr. Dawson was serving, that the state court judge identified three sentences that the state court judge determined should be ones to which the new sentences would run concurrently. This is volume two of the record at page 52, paragraphs 41 and 42. And that applies as to the two operative sentences here, the 2017 J.D. 836 and the 2018 J.D. 76. The state court judge looked at Mr. Dawson's information and determined that the sentence would run concurrently to three, but at the same time looked at his sentences and determined to run consecutively these two new sentences to the two operative sentences. We'll have to look at what you just cited, but how do we know what the state court judge actually looked at when this, that led to this information on the docket sheet? We don't know exactly what the state court judge looked at, but. I thought you just said that the state court judge looked at the sentences. He looked at information in order to. But how do we know that? Because he didn't just make these numbers up willy-nilly. He had to look at some information to determine. But we don't know what information. Well, we don't, but. Do we even know who put these comments on the docket sheet? I don't know, Your Honor. But I do know that the Supreme Court has said in the Dunn v. Reeves case, which we cite in our answer brief, that this Court should presume that a state court judge follows the law and understands the law when it's performing its duties. Could I just ask you a couple of questions that I asked Mr. Lund? Do you know whether pre-sentence detention time is credited toward a sentence once it's imposed in the Colorado juvenile court system? I don't know the answer to that, Your Honor. Well, if that's so, then what happens to your argument that the time on the one-year sentence started in January 2018 as opposed to what Mr. Lund said, that it started in November 2017? The government is making two arguments. Our first argument focuses on the sentence on August 7, 2019. We can get to that. I asked you the question about your other argument. Right. Your other argument is, sentence started January 2018. He escapes for 64 days. So that takes him past February 13. And my question is, if he gets credit for the pre-sentence detention time, your argument doesn't work, unless you can tell me it does. No, Your Honor, that's correct. If he gets credit for pre-sentence time, my second argument would not be as successful as my first argument. My first argument doesn't depend on that information. I understand. My first argument is clean. Well, let's talk about that. How do we know whether the one-year sentence is a true one-year sentence? I mean, do juveniles serve the full sentence? Do they get any credit for good behavior? Do we know anything about that? We don't need to know that for purposes of my first argument. If it's a consecutive sentence, the state court judge would not issue a consecutive sentence unless the defendant is, in fact, serving the sentence to which the new sentence would be consecutive. This Court should presume that the state court judge understood that, followed the law, and determined that, in fact, he was serving the sentences in the two cases at issue here. But isn't it possible that the judge simply said, I want you to serve real time for this new offense, so I'm going to make it consecutive rather than concurrent, which essentially means you're not adding additional time. I want to make sure you do. But that's the only principle I'm saying when I say consecutive, that I want you to serve time for this particular offense. In terms of when it starts, how it starts, what's out there previously, I'm not ruling on any of those things. And it seems to me that just eviscerates any kind of judicial determination that you're now relying on. I don't think so, Your Honor. And the reason why is because that assumes that the state court judge was not taking his sentencing obligation seriously. No, he was taking it seriously, but he was allowing the prison authorities to calculate what this guy's sentencing times were. I mean, I'm not sure that was really before the court, and the district already focused on that. I don't think anybody said, now, Judge, let's really make sure the record shows whether he's incarcerated, how long, and how much credit time he got. We don't have any of that. Nobody said that. But that's a problem for me as to who had the burden to have raised those questions. Let me ask you a question to sort of follow up on this. So are you aware of a case where a judge has imposed a consecutive sentence to an already completed sentence? I'm not aware of one. And if a court did that, either a federal court or a state court did that, that would not be a proper sentence. There's nothing here suggesting. Why not? Is there anything wrong with that? I mean, if the previous sentence were served and the judge says consecutive, what difference does it make? Is there any problem with that? It cannot be. By definition, it cannot be a consecutive sentence. But does it even matter? Would it even matter? If the judge said that, what are we going to do? Do we reverse and say you shouldn't have said consecutive? And he says, OK, instead of 10 years consecutive, I'll just say 10 years. But it's still 10 years. But he couldn't say concurrent either. I mean, it would be just as wrong if the other sentence had already been served. It would be just as wrong to say concurrent. That's exactly right. It would be error for the state court judge to say either one. Either. And there's no indication here that the state court judge made such errors. And the fact that the state court judge looked at five different sentences that Mr. Dawson was serving at that time, five sentences, and made the decision to have two of them consecutive sentences and then the other three concurrent sentences. Why couldn't it be read that the judge was being extra conscientious and was simply making sure that the sentence that was being imposed, August 2019, was going to be fully served. And so out of an abundance of caution said consecutive. Isn't that a possibility? It isn't the judge not doing the job. It's a judge making sure that the actual sentence is going to be served. But the mere possibility that a state court judge might have done this or that doesn't mean that that shows a lack of a preponderance of evidence, as the district court here found. The problem, counsel, is all you've got is this docket sheet. And it just raises a lot of questions. And I just don't understand why the government didn't produce something beyond this if they wanted the points to be added. Partly, Your Honor, the reason is that there weren't these records. At volume 2, page 51, footnote 7, there's a statement that the DYS informed the probation office that it did not have the records showing when the sentences and the operative cases here, the two cases at issue here, when those cases were discharged. Weren't there other juvenile court records that could have been produced? I don't know the answer to that, Your Honor. Well, that's a problem, isn't it? That there may be records out there that could answer some of these questions. I see that my time has expired. If I could just answer your question briefly. Please. Although the evidence here is not significant or certainly not overwhelming, it does show by a preponderance that the district court could presume that the state court judge followed the law, understood what a consecutive sentence meant, and properly sentenced Mr. Dawson to a consecutive sentence on August of 2019, which meant he was serving the sentences past the February 13, 2019 operative date. We would ask that the court affirm. Thank you, counsel. I understand your argument. Thank you. Mr. Luana, 30 seconds. Judges, I'm sorry. Judges, it's important, obviously, that you recall what the government's attorney said at this hearing, which she agreed with the defendant's counsel that it was shocking that there were no records. And then beyond that, I just simply think it's important to go back to the Erlanger case where it indicates that the defendant may have no incentive to correct what does not matter in his case. And these are juvenile adjudications. And so that's his situation here. May I just ask a question?  I'm troubled about who has the responsibility at the sentencing to say, Judge, wait just a minute. We don't think the record shows whether he is serving current sentences or not. Can we get that clarified? Who should have spoken up at that time to get that in the record at that time? Which attorney was at fault for being silent? In the earlier state court adjudication? Right, at the state court adjudications. No, at the sentencing. Yes, and I can't answer that. I would think always that there's some responsibility by the state to be able to establish that there was, in fact, a prior sentence that was in existence. It's kind of a duty or responsibility of the state to make sure the records show that. Yes. So if the state had that responsibility, then isn't it more logical to hold the state responsible for simply a gap in the information? I think so, and I think there is that gap, and we can't speculate about what might have happened. Thank you. Thank you.  All right, time has expired. The case will be submitted. Mr. Johnson, you're excused. Mr. Lund, we'll hear from you in the third case. Thank you.